ARTHUR LALIBERTE *vs.* PUBLIC SERVICE MUTUAL
CASUALTY COMPANY, INC.

NOVEMBER 26, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass on the case, brought under general laws 1938, chapter 155. It was tried in the superior court to a jury, which returned a verdict in favor of the plaintiff. The defendant's motion for a new trial was denied by the trial justice and the defendant duly prosecuted its bill of exceptions to this court.

The following facts appear in evidence. The plaintiff's automobile, which was being operated by him, was in collision in the city of Woonsocket in January 1942 with an automobile owned by William A. Piette and driven by his agent. The plaintiff thereupon brought an action against Piette to recover damages growing out of said collision; and the defendant in the present case, which had issued a liability insurance policy to Piette covering his automobile, was duly notified of the accident and of the bringing of that action. However, the insurance company, the defendant herein, disclaimed all liability arising out of the accident, contending that the policy which it had issued to Piette did not cover his automobile while it was in use under the existing circum-

stances. The insurer, therefore, did not defend him in the action brought by the plaintiff and eventually Piette was defaulted therein, judgment was entered in favor of the plaintiff and an execution issued which has not been satisfied. Thereafter the plaintiff instituted the present action against the insurance company to recover the amount of his judgment against Piette.

In taking the position that its policy did not cover Piette's automobile in view of all the facts, the defendant relies on an exclusion clause in the policy which it issued to him. This clause reads as follows: "This policy does not apply: (a) under coverages A and B, while the automobile is used as a public or livery conveyance, or for carrying persons for a charge, unless such use is specifically declared and described in this policy and premium charged therefor".

It further appears from the evidence that on the date of the accident Piette owned seven automobiles, six of them registered for public service and the seventh for his own private use. In his testimony he described his business as "public car service". The six automobiles registered as above described were covered by appropriate liability insurance under a single policy issued by the defendant company. The seventh, Piette's personal car, was covered by a separate policy which is the one involved in the instant case.

The evidence also shows that, beginning in August 1941, Piette operated the above six automobiles at certain regular hours of the day and night in transporting, for a charge, persons living in Woonsocket to and from their work at a mill in Pawtucket. He had a regular clientele and transported the same persons daily. For this service they each paid him $2 or $2.50 per week. As far as possible, the same automobile was used on each trip for the same persons. On the night in January 1942 when the collision with the plaintiff's car took place, one of Piette's six automobiles registered for public service had broken down and its driver, his agent, without Piette's consent or knowledge, took the automobile registered for Piette's private use from its parking place so as to

make a regular trip at midnight from the mill in Pawtucket, in order to transport workers to their homes in Woonsocket. On this trip the collision with the plaintiff's car occurred in the latter city, Piette's automobile containing at that time five persons besides the driver.

It is not disputed that this automobile, which was in collision with the plaintiff's car, was at that time being used for carrying persons for a charge. Further, such use was not specifically declared and described in the liability policy issued by the defendant covering that automobile and no premium had been charged for such use.

At the conclusion of all the evidence the defendant moved that the trial justice direct a verdict in its favor. This motion was denied and the defendant is now pressing its exception to that ruling. The plaintiff contends that the instant case is governed by the decision of this court in *O'Donnell* v. *New Amsterdam Casualty Co.*, 50 R. I. 269; that the above ruling of the trial justice was correct; and that the verdict herein should be upheld.

After careful consideration we have come to the conclusion that the present case is not controlled by the *O'Donnell* case, *supra*. Different facts and circumstances, different language in the respective exclusion clauses and a difference in the situations intended by the parties to be covered by such exclusion clauses make the two cases distinguishable. In the *O'Donnell* case the court found that the exclusion clause in question was ambiguous and susceptible of more than one meaning and, therefore, under those circumstances, applied the established rule of construction, which we approve, that any uncertainty in its meaning would be decided in favor of the assured rather than of the insurer. In this connection the court, at page 273 of its opinion, stated: " 'Condition A' excepts from the insurance under the policy not automobiles while *rented* but 'while being used for rental or livery purposes.' This exception is a prohibition of an habitual course of conducting the business of the assured and does not prohibit a single and isolated transaction in an emergency such

as the one under consideration. The bus was not kept for the purpose of being rented and there was no increase in the risks in the instant case." The court refused to accept the defendant's contention that the exclusion clause should be interpreted to cover a single rental of the bus.

The portion of the opinion in the *O'Donnell* case relating to loans and rentals is obviously not applicable in the present case. The plaintiff, however, contends that if the exclusion clause in that case was ambiguous, then the exclusion clause now before us for construction should likewise be held to be ambiguous, and that it should be construed as not applying to a single isolated instance of carrying persons for a charge, thus making the defendant liable under its policy. We are unable to adopt the plaintiff's position on this point.

In the two clauses under comparison the insurers made entirely different situations the subject of exclusion from the coverage of their respective policies. Clearly these clauses are not similar either in form or in substance. The clause we are considering in this case relates to the use of the assured's private automobile for the carrying of persons for a charge. The clause construed in the *O'Donnell* case related to the use of the assured's bus for rental or livery purposes. In that case the policy expressly authorized the use of the bus for the purpose of transporting passengers for a consideration. The fact that the word "used" appears in both clauses does not of itself require that they be construed in exactly the same manner. Each has to be considered as a whole in order to ascertain its intended meaning.

We can understand how the court in the *O'Donnell* case, in passing upon the clause "while being used for rental or livery purposes" might come to the conclusion that such a clause was ambiguous and susceptible of more than one meaning. When that clause is considered as a whole, the meaning of the words "while being used for rental . . . purposes" cannot be said to be entirely clear. The words "rental purposes" are just as material as the word "used". The exclusion provision in that policy setting out that the bus was

not covered while being used for rental purposes was open to several meanings, and the court might well hold that a use of a bus, in view of the words "rental purposes", and in the light of the facts of that case, did not mean an isolated use of such a bus by another allied bus company in an emergency, but did mean a prohibition of an habitual course of conducting the assured's business.

However, the clause now before us in the instant case contains no expression of doubtful meaning which corresponds with the expression "rental purposes" appearing in the clause before the court in the·O'Donnell case. It is plain that, in the present case, the parties to the policy intended to exclude from coverage the assured's private automobile while it was being used to carry persons for a charge, so that if any accident happened *during that time* the defendant would not be liable therefor; but otherwise the policy would be in full force and effect.

It appears that Piette was in the business of operating automobiles for public service, having six which the defendant company covered for such service by a liability policy for which he paid an added premium. His own private automobile, however, he elected to have covered by the defendant by an ordinary liability policy containing the exclusion clause which we now have under consideration. In other words, the parties to the insurance contract involved in this case had full knowledge and understanding of the differences between the two policies and of the extent of the coverage provided for by each, and intentionally contracted that Piette's private automobile be covered only in the ordinary way at no added premium and with the prohibition contained in the exclusion clause in question. This prohibition was a legitimate exclusion and one which should be and is capable of clear expression in the English language.

Upon consideration we are of the opinion that the clause in the defendant's policy, namely, "while the automobile is used . . . for carrying persons for a charge" is a clear and unambiguous expression, susceptible only of the meaning

which the defendant urges upon us. Therefore, the above-mentioned well-established rule of construction, which was applied in the *O'Donnell* case against the insurer, does not become applicable in the present case.

The above holding finds support in other cases. In *Myers* v. *Ocean Accident & Guarantee Corp.*, 99 Fed. 2d 485, a liability insurance policy contained a clause substantially excluding coverage "while any private passenger . . . vehicle . . . is being used for . . . *the carrying of persons for a consideration.*" This clause was before the court for construction. In holding that the wording should be applied in its "plain ordinary and popular sense" to the facts, the court, at page 489 of its opinion, stated: "There is no ambiguity in the exclusion clause of this policy. The words used are all current in every day use, and expressly exclude coverage not only while the motor vehicle covered by the policy is used for rental or livery purposes, but also while it 'is being used for . . . the carrying of persons for a consideration'". See also *State Farm Mutual Automobile Ins. Co.* v. *Self*, 93 Fed. 2d 139; *American Fidelity Co.* v. *Provencher*, 90 N. H. 16; *Topkis* v. *Rosenzweig Continental Casualty Co.*, 333 Pa. 529; *Sumida* v. *Pacific Automobile Ins. Co.*, 51 Cal. App. 2d 472.

Since Piette's automobile, at the time of the accident, was admittedly being used to carry persons for a charge, it follows that the exclusion clause would be operative. Therefore, the defendant is not liable to the plaintiff under the policy, and the trial justice was in error in refusing to grant the defendant's motion for a directed verdict in its favor, as there was no question of fact to be submitted to the jury.

The defendant's fifth exception is sustained and it becomes unnecessary to consider its other exceptions.

The plaintiff may appear before this court on December 3, 1943 and show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

*John R. Higgins, Higgins & Silverstein,* for plaintiff.
*Henry M. Boss. Francis W. Conlan,* for defendant.